UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
LYCOMING ENGINES,                  )   No. C07-1854RSL
                                   )
            Plaintiff,             )   ORDER DENYING PLAINTIFF'S
    v.                             )   MOTION FOR PRELIMINARY
                                   )   INJUNCTION
PRECISION AIRMOTIVE, LLC,          )
                                   )
            Defendant.             )
_____)

# I. INTRODUCTION

This matter comes before the Court on "Plaintiff Lycoming Engine's Motion for a Preliminary Injunction." Dkt. # 4. In October 2007, defendant Precision Airmotive learned that its line of MSA carburetors would be uninsured as of November 1, 2007. Precision immediately notified its main customer, Lycoming Engines, that it would not be able to ship any MSA carburetors after October 31, 2007, and cancelled approximately 290 previously-confirmed orders. This turn of events was disastrous for both Precision and Lycoming, and the parties made initial attempts to ensure the continued production of the carburetors. When these efforts failed, plaintiff filed suit, claiming breaches of contract and the implied duty of good faith and fair dealing and seeking specific performance and replevin. In this motion, plaintiff seeks injunctive relief compelling defendant to ship all available MSA carburetors to plaintiff and to

ORDER DENYING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

continue manufacturing carburetors until all of the existing purchase orders have been filled.[1]

## II. DISCUSSION

### A. Standard for Preliminary Injunction

In determining whether to grant a preliminary injunction, the Ninth Circuit considers: (1) the likelihood of plaintiff's success on the merits; (2) the possibility of irreparable injury to plaintiff if an injunction is not issued; (3) the extent to which the balance of hardships favor plaintiff; and (4) whether the public interest will be advanced by the injunction. See Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994); Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir. 1980). The analysis is often compressed into a single continuum where the required showing of merit varies inversely with the showing of irreparable harm. See United States v. Odessa Union Warehouse Co-Op, 833 F.2d 172, 174 (9th Cir. 1987). Thus, plaintiff may be entitled to preliminary relief if it is able to show either (1) probable success on the merits and the possibility of irreparable harm or (2) the existence of serious questions going to the merits and a fair chance of success thereon, with the balance of hardships tipping sharply in favor of an injunction. Miller, 19 F.3d at 456. "[T]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and the balance of the hardships tip in their favor." Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003).[2]

---

[1] Neither party requested oral argument under Local Civil Rule 7(b)(4). Accordingly, the Court decides this matter on the memoranda, declarations, and exhibits submitted by the parties.

[2] The parties disagree regarding the nature of the relief requested in this motion and the level of scrutiny to be applied by the Court. Defendant argues that plaintiff seeks a mandatory injunction because the relief requested – namely the compelled production and shipment of MSA carburetors – requires affirmative action on its part. Mandatory injunctions will be granted only if the facts and law clearly favor the moving party. Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993). Plaintiff, on the other hand, argues that it seeks only to preserve the last uncontested status between the parties, which

ORDER DENYING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION           -2-

**B. Likelihood of Success on the Merits**

Because the motion for preliminary relief was filed shortly after the complaint was served, the parties have presented a truncated factual record for the Court's consideration. Having reviewed all of the materials submitted by the parties, the Court is unable to conclude that plaintiff is likely to succeed on the merits of its claims. The first and most glaring impediment to such a finding is that neither party has been able to describe, much less produce, the contract between the parties. The record, including the parties' descriptions of their course of dealing, suggests that the terms of their agreement were set forth in both written and oral forms.[3] The written portion of the contract seems to include layers of price lists, purchase orders, web-based terms and conditions, spreadsheets, and invoices. At least some of the written terms, such as the delivery date, were subject to change simply by "updating" the spreadsheet.

The oral portion of the agreement is more difficult to catalogue, but one can infer from the record that the parties developed an overarching and unwritten framework in which the individual purchase orders were negotiated and filled. For example, the parties apparently had an understanding that Lycoming would provide some of the raw materials to Precision whenever it ordered a remanufactured carburetor. This part of the agreement is not reflected in any of the documents provided by the parties, and yet it greatly impacted the balance of duties and responsibilities reflected in the written purchase orders. Similarly, there is evidence that both

---

involved the periodic shipment of MSA carburetors pursuant to confirmed purchase orders. Prohibitory injunctions are not subject to the same heightened scrutiny that applies to requests for an order compelling affirmative action. Because the Court finds that plaintiff has failed to meet the less restrictive standard for a prohibitory injunction, it need not determine whether plaintiff's motion is best characterized as a request to compel production and shipment (a mandatory injunction) or a request to prohibit defendant from ceasing shipments (a prohibitory injunction).

[3] Such hybrid agreements are permissible under both the Uniform Commercial Code and Washington law. Whether a written contract is fully integrated and/or subsumes any existing or contemporaneous oral agreements turns on the intent of the parties. See RCW 62A.2-202; Ban-Co Inv. Co. v. Loveless, 22 Wn. App. 122, 130-31 (1978).

ORDER DENYING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION        -3-

parties understood that products liability insurance was a prerequisite to defendant's continued manufacturing operations. Precision apparently told Lycoming on several occasions that, while it was willing to sell MSA carburetors to Lycoming at a loss, the complete absence of products liability insurance would cause it to abandon the business entirely.[4] The fact that insurance was not included as a condition precedent in the written contract does not necessarily mean that it was not a part of the overall agreement.

The Court's inability to ascertain the terms of the parties' agreement makes it impossible to determine whether plaintiff is likely to succeed on the merits of its claims. If, as appears to be the case, Precision had the power unilaterally to alter the shipping date on confirmed orders simply by changing the spreadsheet, a breach may not have occurred here. If a basic assumption underlying the parties' relationship was that Precision would be able to purchase insurance for its products, the unavailability of the relevant insurance instrument could justify defendant's failure to deliver the promised carburetors. It is also possible that Lycoming's failure to provide any carburetor cores after October 9, 2007 (see Supp. Decl. of Verne Wepener at ¶ 4 (filed 12/21/07)), excused Precision's subsequent failure to rebuild and ship approximately 225 of the 291 carburetors on order. With the uncertainties regarding the terms of the parties' agreement, the Court is simply unable to determine whether plaintiff is likely to succeed on the merits of its claims.

**C.      Possibility of Irreparable Injury**

In addition to demonstrating a likelihood of success on the merits, plaintiff has the burden of showing the possibility of "irreparable injury," which includes injuries that cannot be fairly compensated by monetary damages or other forms of relief available at law. See eBay

---

[4] Decl. of Scott Grafenauer at ¶¶ 11-12 (filed 12/17/07). Plaintiff argues that it was unaware, prior to October 9, 2007, that Precision intended to stop producing carburetors. Supp. Decl. of Verne Wepener at ¶ 6 (filed 12/21/07). At most, this lack of notice creates a genuine dispute regarding the terms of the parties' agreement which the Court cannot, in the context of this motion, resolve.

Inc. v. MercExchange, LLC, 547 U.S. 388, 126 S. Ct. 1837, 1839 (2006). Precision is the only FAA-certified source of MSA carburetors: its refusal to manufacture and ship carburetors to Lycoming has effectively halted plaintiff's production of carbureted engines and caused (or will cause) cancelled orders, employee layoffs, and the loss of good will/customers. Although there is reason to suspect that plaintiff's claims of irreparable injury are overstated,[5] the Court will assume for purposes of this motion that Lycoming's inability to complete orders may cause a loss of good will and/or customers that cannot fairly be compensated by monetary damages.

**D.     Balance of Hardships and the Public Interest**

Given the uncertainties regarding the terms of the parties' agreement and the concomitant doubts regarding plaintiff's ability to prove its claims, preliminary relief will be granted only if plaintiff makes a strong showing that the balance of hardships and the public interest tip in its favor. Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007). The cessation of Precision's MSA carburetor business has caused or will potentially cause the same types of harm – namely, cancelled orders, employee layoffs, loss of income, loss of good will, and loss of customers – to both plaintiff and defendant. Nevertheless, defendant opted to shut down its operations because the alternative – risking the financial viability of the company by selling uninsured products – was worse. The Court is not in a position to criticize or second-guess defendant's business judgment: when faced with a choice of evils, defendant chose to take upon itself the hardships plaintiff now faces rather than "play bet-the-company Russian Roulette on every self-insured carburetor it would be required to sell to Lycoming." Opposition at 10.

---

[5] During their pre-litigation negotiations, the parties discussed two options that would have allowed Lycoming to continue its operations virtually uninterrupted. Despite the parade of injuries described in its motion, plaintiff declined both offers for reasons that are not clear from the record. In addition, defendant has agreed to sell its MSA carburetor operations to another company which should be ready to begin filling orders within a few weeks.

Plaintiff argues that all of the carburetors manufactured by Precision before October 31, 2007, are now uninsured and that forcing defendant to continue selling carburetors to Lycoming will impose no additional costs or risks on defendant. This argument was raised for the first time in reply, thereby depriving defendant of its opportunity to respond to plaintiff's characterization of its insurance situation. Without copies of the relevant policies or some more authoritative source regarding their terms than Mr. Harrington, the Court is unable to determine the nature and scope of plaintiff's current coverage. Even if plaintiff is right and defendant's now-defunct policies covered only accidents occurring within the specified policy periods, every new or refurbished carburetor put into service incrementally increases the chance that a future air accident will involve a Precision product and enmesh defendant in litigation. The costs of defending, much less losing, an air products liability suit could easily overwhelm a company like Precision, and defendant was willing to forego an entire product line in order to avoid that risk. The Court finds that the risks of litigation and bankruptcy outweigh the many difficulties Lycoming has faced as a result of Precision's refusal to manufacture and sell MSA carburetors after October 31, 2007.

The Court also finds that the public interest does not favor the requested injunction. The public generally has an interest in holding parties to the terms of their contracts and ensuring that manufacturers have a reliable source of component parts. In this case, however, the Court is not convinced that forcing defendant to place uninsured products into the stream of commerce benefits the public in any way.

### III. CONCLUSION

For all of the foregoing reasons, plaintiff's motion for preliminary injunction (Dkt. # 4) is DENIED.

Dated this 4th day of February, 2008.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge